**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MACLEAN POWER, LLC, | ) | |
| a Delaware Limited Liability Company, | ) | |
| | ) | Civil Action No. 07 C 0657 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | The Hon. Virginia M. Kendall |
| | ) | District Court Judge |
| PDEX USA, CORP., a Florida Corporation, | ) | |
| QUALITY CABLE & ELECTRONICS, INC., | ) | |
| a Florida Corporation, and PEAK TRADING | ) | The Hon. Michael T. Mason |
| CORPORATION, a New York Corporation, | ) | Magistrate Judge |
| | ) | |
| Defendants. | ) | |

**MOTION FOR ORDER PURSUANT TO**
**FEDERAL RULE OF CIVIL PROCEDURE 4(f)(3)**

Plaintiff, MacLean Power, LLC, ("MacLean Power"), by its attorneys, The Alden Law Group, LLP and Winston & Strawn, LLP, respectfully requests this Court to enter an order finding that service by e-mail of Ningbo Fastlink Equipment, Co, Ltd., ("Ningbo"), David Zhang (Zhang"), and Charlie Jin ("Jin"), (collectively, the "Ningbo Defendants") is proper pursuant to Federal Rule of Civil Procedure (FRCP) 4(f)(3) and provides actual notice to the Ningbo Defendants. In support of its Motion, MacLean Power states as follows:

1. On July 2, 2009, this Court ordered MacLean Power to personally serve Ningbo with a copy of its Motion for Rule to Show Cause, Sanctions and Other Relief Against the Ningbo Defendants and this Court's Order. However, such service would, in fact, violate international treaty. Service via e-mail though is entirely appropriate here.

2. China and the United States are both signatories to the Hague Convention On the Service Abroad of Judicial and Extra-Judicial Documents in Civil and Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361, T.I.A.S. No. 6638 (hereinafter the "Hague Convention"). *See*

http://travel.state.gov/law/info/judicial/judicial_694.html last visited July 14, 2009) (noting the ratification of the Hague Convention by China and the United States).

3. The Hague Convention does not prohibit service by e-mail or facsimile. *See Williams-Sonoma, Inc. v. Friendfinder, Inc.*, 2007 WL 1140639 (N.D. Cal. 2007) (granting leave to serve international defendants by e-mail). See *Williams-Sonoma, Inc. v. Friendfinder, Inc.*, attached hereto as Exhibit A. Instead, China's objection to Article 10(a) and 10(b) of the Convention only prohibits service of Chinese nationals by postal channels and by personal service. *See* http://www.hcch.net/index_en.php?act=status.comment&csid=393&disp=resdn (providing a translation of China's declarations which contain objections to Article 10). Accordingly, whereas e-mail service is acceptable, personally serving Ningbo in this matter would violate the Hague Convention.

4. Furthermore, The Hague Convention does not apply when the address of the intended recipient of service is unknown. *See* Hague Convention, Article 1; *Popular Enterprises, LLC v. Webcom Media Group, Inc.*, 225 F.R.D. 560, 562-63 (E.D. Tenn., 2004) (citing the inapplicability of the Hague Convention and issuing a FRCP 4(f)(3) order authorizing service by e-mail).

5. In Case No. 08CV02593 before Northern District Judge Ronald A. Guzman, MacLean Power, along with MacLean-Fogg Company (collectively, "MacLean"), brought suit against the Ningbo Defendants for their using MacLean's trademarks in their website, online materials, mail representations, and invoices in order to sell inauthentic automatic connectors.

6. Ningbo's website indicates that the company's address is: Ningbo Fastlink Equipment Co., LTC; Tiantong, Wuxiang, Yinzhou, Ningbo, Zhejiang, China (the "Ningbo Address"). See Ningbo website page, attached hereto as Exhibit B.

7.      MacLean attempted to serve the Complaint and Summons in Case No. 08CV2593 by Federal Express to each of the Ningbo Defendants at the Ningbo Address.  The Federal Express packages arrived at the destination and were signed for on May 26th, 2008.  See Federal Express pages, attached hereto as Group Exhibit C.

8.      On August 18, 2008, nearly three months after the packages were signed for, the packages were left at the Chinese Federal Express facility.  Federal Express was told that the recipients had moved from the Ningbo Address, as further verified by Robert Jacobs, an attorney at Winston & Strawn at that time.  See Federal Express e-mail, attached hereto as Exhibit D; see also Affidavit of Robert Jacobs, ¶ 5, attached hereto as Exhibit E.  Despite this, the Ningbo website continues to list the same address.  See Exhibit B.  Accordingly, MacLean does not have an address to use for service of the Ningbo Defendants under the Hague Convention.

9.      MacLean additionally effected service via e-mail on each of the Ningbo Defendants. David Zhang was e-mailed at:  david@fastlink.com.cn, Ningbo was e-mailed at nxlj8888@vip.sina.com, and Charlie Jin was e-mailed at CJin@fastlink.com.cn (hereinafter referred to collectively as the "Ningbo E-mail Addresses").  See E-mail to the Ningbo Defendants, attached hereto as Exhibit F.  The Ningbo E-mail Addresses are listed on Ningbo's website and are used by the Ningbo Defendants to conduct or solicit business, including business with MacLean.  See Exhibits B, G and H.

10.     Federal Rule of Civil Procedure 4(h)(2) governs service of corporations, partnerships, or associations not within any judicial district of the United States.  Accordingly, it governs service on Ningbo.  The rule permits service in any manner prescribed by FRCP 4(f) except for personal delivery under (f)(2)(C)(i).  Service of individuals in foreign countries is also governed by FRCP 4(f).

11.     Federal Rule of Civil Procedure 4(f)(3) permits service by "means not prohibited by international agreement, as the court orders."

12.     Even if the address MacLean has is valid, but the Ningbo Defendants are attempting to evade service, Hague service will still be problematic.  On September 12, 2008, Mr. Jacobs contacted three prominent providers of Hague Convention service – TransPerfect, LegalLanguage Services, and Crowne Foreign Services (hereinafter the "Hague Service Providers").  According to those providers, Hague Convention Service to China usually fails due to incorrect or imprecise address of service information.  See Affidavit of Robert Jacobs, ¶¶ 7-11, attached hereto as Exhibit E.

13.     According to the Hague Service Providers, translations of addresses from English to Chinese is imprecise, given that the English addresses are themselves usually phonetic representations of Chinese characters that are unlikely to be properly reconstructed into the original Chinese characters from the English text.  If the address is not provided to the Chinese Central Authority in the same Chinese characters that appear in the company's registration with the Chinese Government, the targeted recipients of service are allowed to refuse service by stating that the intended recipient is not at the stated address.  See Exhibit E, ¶¶ 7-11.

14.     There is a substantial risk that attempted Hague service will be futile.  According to The Hague Service Providers, Hague service on *individuals* in China fails approximately 60% of the time.  See Exhibit E, ¶ 12. Where there is any uncertainty surrounding the accuracy of a Chinese *corporate* defendant's Chinese name or registered address, attempted Hague Convention service fails approximately fifty percent (50%) of the time.  See Exhibit E, ¶ 12.

15.     Hague service is particularly futile with respect to Chinese counterfeiters such as the Ningbo Defendants.  In 2006, MacLean Power had retained Daniel Goytia & Associates

4

("Goytia" or the "Investigator") to investigate whether the Ningbo Defendants' counterfeit products were being distributed in the United States. The Investigator visited Ningbo and observed that it is a small workshop in a village in mainland China known as Tiang Tong and is only staffed with approximately thirty (30) temporary workers. See Affidavit of Daniel Goytia, ¶ 4, attached hereto as Exhibit I. Often, Chinese counterfeiters maintain small workshops and use a light work force of temporary laborers so that they can evade detection and close up shop and disappear when they are discovered. See Exhibit I, ¶ 6. Goytia also met with Ningbo's manager, Zhang. Even though Zhang was aware of the Trademarks, he fully intended to begin selling counterfeit products in the U.S. market nonetheless, and even informed the Investigator that he had an importer in the United States who required the use of the Trademarks on each exported product. See Exhibit I, ¶ 7.

16.     Hague service on the Ningbo Defendants is also time-consuming. The Hague Service Providers indicated that it could take up to a year for the Chinese Central Authority to provide a response regarding the success or failure of Hague service attempts on Chinese Defendants. See Exhibit E, ¶ 9. Crowne Foreign Services even reported that it had seen an attempted service take 17 months. See Exhibit E, ¶ 9. The providers indicated that corporations with Chinese government contacts are often able to effectuate Hague service delays. See Exhibit E, ¶ 9. Furthermore, the providers indicated that their quoted timeframes are not even necessarily associated with *successful* service, but instead represent the time before *any* response is returned to the party initiating service – even if the response happens to be that the recipient was not found at the stated address. See Exhibit E, ¶¶ 7-14.

17.     Hague service on the Ningbo Defendants is prohibitively expensive. The three Hague Service Providers submitted bids for service on all three Ningbo Defendants ranging from

just over $3000 to nearly $5000.  See Exhibit E, ¶ 14.  The fee does not guarantee successful service, only the attempt.  See Exhibit E, ¶ 14.  Should initial Hague service fail, MacLean would have to bear this cost again for each subsequent attempt.

18.     Accordingly, in light of (1) the questions surrounding the validity of the Ningbo Defendants' listed address and/or their intent to evade service, (2) the urgency associated with effectuating service to avoid additional harm perpetrated by the Ningbo Defendants against MacLean and the public, and (3) the fact that Hague service on the Ningbo Defendants would be prohibitively expensive, time consuming, and potentially futile, Hague service is a poor option when the Federal Rules of Civil Procedure permit service of the Ningbo Defendants by other means.

19.     Under Rule 4(f), a court may order service pursuant to 4(f)(3) irrespective of the availability of alternative methods of 4(f) service.  *Rio Properties, Inc. v. Rio Intern. Interlink*, 284 F.3d 1007, 1015-16 (9th Cir. 2002) (stating that FRCP 4(f)(3) is "neither a 'last resort' nor 'extraordinary relief' . . . [but] is merely one means among several which enables service of process on an international defendant").[1]

20.     Service via e-mail is especially appropriate here as it has been confirmed that the Ningbo Defendants receive actual notice via the Ningbo E-Mail Addresses.  On May 9, 2009, Ningbo specifically referred to MacLean's Motion for Entry of Default Judgment that MacLean filed in Case No. 08CV2593 and which had been served via the Ningbo E-mail Addresses.  See May 9, 2009 E-mail from Ningbo, attached hereto as Exhibit J.

---

[1]In Case No. 08CV2593, MacLean also filed a Motion seeking an Order that service via e-mail upon the Ningbo Defendants is proper based upon these same grounds.  Judge Guzman ultimately ordered that service upon the Ningbo Defendants via the Ningbo E-mail Addresses was proper and provided actual notice to the Ningbo Defendants.

21.     Finally, it bears noting that Mr. Jacobs also provided notice to the Ningbo Defendants of the June 19, 2008 Order for Final Judgment and Permanent Injunction against PDEX USA, Corp. via the Ningbo E-mail Addresses.  See Affidavit of Robert M. Jacobs, attached hereto as Exhibit K.

WHEREFORE, MacLean Power respectfully requests the entry of an order finding that service upon the Ningbo Defendants by e-mail is proper pursuant to FRCP 4(f)(3) and provides actual notice to the Ningbo Defendants.

Dated: July 14, 2009

RESPECTFULLY SUBMITTED,

MACLEAN POWER, LLC


By:     /s/ Robert J. Ambrose_____

Dana A. Alden
Robert J. Ambrose
The Alden Law Group, LLP
2122 York Road, Ste. 180
Oak Brook, IL  60523
Tel: (630) 368-7676
Fax: (630) 368-7677


s/ Bradley C. Graveline_____

Bradley C. Graveline
Brian Fergemann
Winston & Strawn LLP
35 West Wacker Drive
Chicago, IL 60601
Tel: (312) 558-5600
Fax: (312) 558-5700
bgraveline@winston.com